UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHIBALD VORIS, MICHAEL IRICK, AND GREG S. BRINSON, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,<br><br>       Plaintiffs,<br><br> vs.<br><br>RESURGENT CAPITAL SERVICES, L.P.,<br><br>       Defendant. | CASE NO. 06 CV 2253 JM (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

   This is a putative class action alleging violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692 et seq., and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788 et seq. The named plaintiffs are Archibald Voris, Michael Irick, and Greg S. Brinson, all individuals (collectively the "Plaintiffs"). Defendant Resurgent Capital Services, LP ("Defendant") is a limited partnership that at times is a "debt collector" under the FDCPA. Answer ¶ 14. Defendant, having answered the Corrected First Amended Class Action Complaint ("CFAC"),[1] now moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The court held a hearing on the matter on April 13, 2007. After carefully considering the papers and the oral argument of counsel, the court now

---

[1] When the court approved on February 21, 2007 the parties' stipulation to Plaintiffs' filing their Corrected First Amended Class Action, the parties also stipulated that Defendant may, but was not required to, amend its answer, which had been previously filed in response to the original complaint. Since Defendant has not filed an amended answer, the operative answer remains the original one filed October 25, 2006.

1  **GRANTS IN PART** and **DENIES IN PART** the motion for the reasons set forth below. The letters
2  and envelopes at issue in the case are incorporated by reference and copies are attached at the end of
3  this order.

4  **I.     BACKGROUND**

5        The following allegations of fact are not in dispute. During 2005-2006, Plaintiffs each
6  received a letter by mail from Defendant (1) indicating that Plaintiff owed a past-due debt and (2)
7  offering Plaintiff the opportunity to open a pre-approved credit card account to which the past-due
8  debt could be transferred. CFAC, Exs 1-3. Each letter was enclosed in an envelope printed with
9  Defendant's address, the words "return service requested", and, in substantially larger type, the words
10 "You are Pre-approved* See conditions inside". Hyde Decl, Ex. 1. The letters themselves provided
11 in large type along the upper right corner "You are Pre-Approved* For a new Visa (R) Credit Card
12 and you can reduce your debt by [amounts individual to each plaintiff]." CFAC, Exs. 1-3. The Visa
13 logo is also prominently featured on the front of each letter. After informing each plaintiff that he
14 owed a debt that "remains seriously past due" which could be resolved by opening the offered credit
15 card account, the letters went on to provide that

16       If you are not interested in obtaining a Visa credit card to pay your debt, you can
      contact us to set up a cash repayment plan for your debt.
17

18       **Unless you notify Resurgent within 30 days after receiving this notice that you
      dispute the validity of this debt or any portion thereof, Resurgent will assume
      this debt is valid. If you notify Resurgent in writing within 30 days of receiving**
19       **this notice, Resurgent will obtain verification of the debt or obtain a copy of a
      judgment and mail you a copy of such judgment or verification. If you request**
20       **Resurgent in writing within 30 days after receiving this notice, Resurgent will
      provide you with the name and address of the original creditor, if different from**
21       **the current creditor.**

22       Your credit card will not be issued until after the 30 day period mentioned above has
      expired. If you apply for the credit card and dispute or request information regarding
23       your debt during the 30 day period, Resurgent will process your dispute or request for
      information as required by law. Subsequently, upon your request, Resurgent will
24       process your credit card application if permitted by applicable law and the terms of
      this offer.
25

26       **This is an attempt to collect a debt and any information obtained will be used for
      that purpose. This communication is from a debt collector.**

27 Id. (emphasis in original)
28 / / /

1    The CFAC alleges that the language "You are Pre-approved* See conditions inside", printed on the front exterior of the envelope, is a false, deceptive, or misleading means in connection with the collection of a debt in violation of the FDCPA. This is because, according to Plaintiffs, "[b]y giving the impression that the envelopes contained a credit card offer instead of a debt collection letter, Plaintiffs were less likely to regard the envelopes as anything but 'junk mail' and more likely to discard the letters without opening them", thereby causing Plaintiffs to inadvertently forfeit their rights to dispute the debt. CFAC ¶ 44. The CFAC further alleges that in addition to the envelopes, the letters themselves give the false impression they are only pre-approved "junk mail" offers and therefore confuse consumers into disregarding their rights. Id. ¶ 50. Finally, the CFAC alleges that the letters failed to give adequate notice of Defendant's attempt to collect a debt. Id.

On the basis of these allegations, the CFAC asserts that Defendant used false, deceptive, or misleading means in connection with the collection of a debt in violation of 15 U.S.C. §§ 1692e and e(10); attempted to collect a consumer debt by unfair or unconscionable means in violation of 15 U.S.C. § 1692f and f(8); and sent a debt collection letter that unlawfully "overshadows" Plaintiffs' rights as provided for in 15 U.S.C. § 1692g. Plaintiffs seek statutory damages, costs and fees, and declaratory relief. Plaintiffs also demand a jury trial.

**II.     LEGAL STANDARDS**

Rule 12(c) provides,

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). When deciding a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (citing Doleman v. Meiji Mutual Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir.1984) and Austad v. United States, 386 F.2d 147, 149 (9th Cir.1967)). The court construes all material allegations in the light most favorable to the non-moving party. Deveraturda v. Globe Aviation Sec.

Servs., 454 F.3d 1043, 1046 (9th Cir. 2006). Furthermore,

> Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. . . . However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment.

Hal Roach Studios, 896 F.2d at 1550 (citations omitted). Documents attached to, incorporated by reference in, or integral to the complaint, however, may be properly considered under Rule 12(c) without converting the motion into one for summary judgment. Rose v. Chase Manhattan Bank USA, 396 F. Supp. 2d 1116, 1119 (C.D. Cal. 2005) (citing GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997)).

Here, the case is in correct procedural posture for the present motion. The pleadings are closed because Defendant has answered, and the case is in the early stages of litigation. Since the letters and envelopes at issue are integral to the complaint, the court's consideration of them herein do not convert the motion into one for summary judgment.

### III. THE FDCPA GENERALLY

The FDCPA prohibits false or deceptive practices in connection with the collection of debts. 15 U.S.C. § 1692 et seq. The purpose of the Act is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." § 1692(e). Given its remedial nature, courts must construe the Act broadly in order to effect its purposes. Clark v. Capital Credit & Collection Serv., Inc., 460 F.3d 1162, 1176 (9th Cir. 2006).

FDCPA claims are judged by whether the debt collector's conduct is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.'" Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996) (quoting Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988)). This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." Swanson, 869 F.2d at 1227. Rather, "[t]his objective standard 'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous.'" Clark, 460 F.3d at 1171 (quoting Clomon v. Jackson,

988 F.2d 1314, 1318-19 (2d Cir. 1993)).

Given the nuances of summary adjudication in FDCPA cases, a brief discussion of which issues are matters of law or matters of fact is warranted. Although the Ninth Circuit has apparently not addressed the issue, other circuits have found that a plaintiff has a right to a jury trial in FDCPA actions. Sibley v. Fulton Dekalb Collection Serv.,677 F.2d 830, 834 (11th Cir. 1982); Kobs v. Arrow Serv. Bureau, 134 F.3d 893, 898 (7th Cir. 1998) (relying on Sibley and finding that right to jury trial extends to determination of amount of statutory damages). Generally, whether a defendant has violated the FDCPA is a question of fact to be resolved by the jury. See United States v. ACB Sales & Serv., Inc., 590 F. Supp. 561, 570 (D. Ariz. 1984). The question, however, of whether a debt collection letter unlawfully "overshadows" the § 1692g notices therein,[2] which is itself a violation of the Act, is a question of law for the court. Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir. 1997).

Against this background, the court now turns to each of the claims at issue.

**IV.　ANALYSIS**

**A. § 1692e and e(10) - False, Deceptive, or Misleading Means to Collect a Debt**

Section 1692e and e(10) provide,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

§ 1692e.

Plaintiff alleges that the envelopes and letters in this case are a "false, deceptive, or misleading" representation because they give the impression that Defendant's debt collection letter is junk mail and therefore debtors are likely to throw away the letters without reading them. CFAC ¶¶ 43-49. Defendant contends these allegations fail to state claims under § 1692e and e(10) as a matter of law because Plaintiffs only speculate that debtors will throw away the letters without reading them.

---

[2] "In the typical [overshadowing] case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses." Bartlett v. Heibl, 128 F.3d 497, 500 (7th Cir. 1997).

1 Mot. at 8 (citing <u>Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519 (1983) and <u>Steckman v. Hart Brewing</u>, 143 F.3d 1293 (9th Cir. 1998)).

Although Defendant argues that whether debtors will actually throw away the letters invites speculation, at oral argument Defendant did, in fact, concede that a subset of debtors will actually mistake its letters for junk mail and, as a result, discard the correspondence. These issues of fact–whether the correspondence would induce the least sophisticated consumer to discard the letters and if so, whether this constitutes a false, deceptive or misleading means to collect a debt–are more appropriately deferred to the jury. <u>ACB Sales & Service</u>, 590 F. Supp. at 570 ("the determination whether the defendant violated the FDCPA must be resolved by the trier of fact."). <u>Associated General Contractors</u>[3] and <u>Steckman</u>,[4] cited in Defendant's papers, do not compel a contrary conclusion.

Defendant further argues that these allegations are contradicted by the CFAC itself which, by attaching the letters as exhibits, shows that Plaintiffs were not actually deceived since they opened the letters, and therefore no FDCPA claim lies as a matter of law. <u>See Steckman</u>, 143 F.3d at 1295-96 ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). Proof of actual deceit, however, is not required to prevail on a statutory damages claim under the FDCPA; a showing that Defendant violated the statute is sufficient. <u>See Baker v. G.C. Serv. Corp.</u>, 677 F.2d 775, 780-81 (9th Cir. 1982) (holding that a plaintiff is entitled to statutory damages under the FDCPA even absent proof of actual damages); <u>Bartlett v. Heibl</u>, 128 F.3d 497, 499 (7th Cir. 1997) (holding that defendant could be held liable for sending a confusing debt

---

[3] In <u>Associated General Contractors</u>, the Supreme Court held that a labor union's antitrust complaint against a contractor's association failed to state a claim because the union had failed to adequately allege harm to the union from the association's coercion of third parties. <u>Associated General Contractors</u>, 459 U.S. at 902-04. By contrast here, the allegations of injury are not speculative in the same sense, since in this case Plaintiffs contend the injury flows directly from Defendant's communications with debtors themselves, and not from any interaction with third parties.

[4] <u>Steckman</u> was a securities class action in which the Ninth Circuit, without discussion, found the allegation that the defendant "channel stuffed" its distributors–that is, oversupplied its distributors in one quarter to artificially inflate sales for that quarter–was "speculation made in hindsight" and therefore failed to state a claim for breach of duty to disclose. <u>Steckman</u>, 143 F.3d at 1298. By contrast here, Defendant conceded that some debtors will throw away its letters on the mistaken belief that such letters are junk mail. Therefore, the harm in this case is not speculation made in hindsight.

collection letter, even when the plaintiff did not actually read the letter, because plaintiff was "seeking only statutory damages, a penalty that does not depend on proof that the recipient of the letter was misled.").

Finally, Defendant argues that no § 1692e or e(10) violation can be found as a matter of law because the envelope properly informs Plaintiffs that a pre-approved credit card is contained therein. However, this argument fails because it does account for the overall context and appearance of the envelope and letter. Taken together, the envelope and letter, as discussed in Part IV.C. infra, misleads debtors despite any truth to the credit card offer language on the envelope.

Therefore, the motion is denied with respect to the § 1692e and e(10) claims. However, as discussed in Part IV.D of this order, to the extent those claims are predicated on violations of California law, the motion is granted for the reasons stated therein.

**B.    § 1692f and f(8) - Unfair or Unconscionable Means**

Section 1692f and f(8) provide,

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

§ 1692f. The CFAC alleges that the "You are Pre-Approved* See conditions inside" language on the envelope violates this provision.

Defendant argues that this language falls within the "benign language" exception to § 1692f(8) and therefore no § 1692f violation can be found. Plaintiff responds that the language is not benign because it induces debtors to disregard the letters as junk mail. Plaintiff further argues that even if the exception applies to preclude a § 1692f(8) claim, which specifically regulates language on envelopes, the exception does not preclude their general § 1692f claim.[5] Since the Ninth Circuit has not yet addressed the benign language exception, this court must decide whether it should be adopted in this case.

---

[5] This is because, according to Plaintiffs, § 1692f generally prohibits "unfair and unconscionable means" in connection with the collection of the debt, without limiting violations to the means enumerated in § 1692f(1)-(8). See § 1692f.

The FDCPA prohibits "*any* language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." § 1692f(8) (emphasis added). In recognition that a strict application of § 1692f(8) could "create bizarre results likely beyond the scope of Congress's intent in enacting the statute", Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318 (8th Cir. 2004), other circuits have created the so-called benign language exception to § 1692f(8). Under this exception, language or symbols not referring to debt or debt collection, or not tending to embarrass the debtor or otherwise infringe on the debtor's privacy, does not violate the Act. See, e.g., Goswami v. Am. Collections Enter., Inc., 377 F.3d 488 (5th Cir. 2004) (finding as a matter of law that phrase "priority letter" on envelope did not violate FDCPA); Strand, 380 F.3d at 319 (finding that phrase "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED" on envelope did not violate FDCPA); Lindberg v. Transworld Sys., Inc., 846 F. Supp. 175, 180 (D. Conn. 1994) (finding that symbol printed on envelope, comprising of a blue stripe and the word "TRANSMITTAL", did not violate FDCPA).

Here in the Ninth Circuit, the Central District of California has adopted the benign language exception in Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1466 (C.D. Cal. 1991) and found the language (1) giving notice that theft of mail or obstruction of delivery is a federal crime, (2) "PERSONAL & CONFIDENTIAL", and (3) "Forwarding and Address Correction Requested", did not violate § 1692f(8) as a matter of law. Id. at 1466. In addition, the Federal Trade Commission has issued the following commentary with respect to § 1692f(8):

> Harmless words or symbols. A debt collector does not violate [§ 1692f(8)] by using an envelope printed with words or notations that do not suggest the purpose of the communication. For example, a collector may communicate via an actual telegram or similar service that uses a Western Union (or other provider) logo and the word "telegram" (or similar word) on the envelope, or a letter with the word "Personal" or "Confidential" on the envelope.

FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988).[6] Given that the trend of authority is to recognize the existence of a benign language

---

[6] The court does not give deference to the FTC's commentary pursuant to Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), because "interpretations contained in formats such as opinion letters are entitled to respect ... but only to the extent that those interpretations have the power to persuade." Christensen v. Harris County, 529 U.S. 576, 587 (2000); Goswami, 377 F.3d at 493 n.1. See

exception to § 1692f(8), and recognizing that certain language printed on an envelope may actually buttress the purposes of the FDCPA (e.g., "Personal and Confidential"), this court finds that the exception should apply in this case.[7]

Before determining whether the envelope here does or does not violate § 1692f(8) pursuant to the benign language exception, the court must first define the scope of the exception. Defendant urges this court to adopt the definition formulated in the current case law, which provides that language is benign so long as it does not pertain to debt, debt collection, or otherwise does not cause embarrassment to the debtor. See, e.g., Goswami, 377 F.3d at 494. Plaintiffs propose that benign language means language that does not cause injury to the debtor.

The court finds, given the nature of this case, that Defendant's definition is too narrow. To be sure, any language pertaining to debt or debt collection would, as Defendant suggests, not fall within the safe harbor of benign language. Certainly there exist those cases where the theory of liability has been predicated upon a technical violation of the statute with only statutory damages being sought. See, e.g., Goswami, 377 F.3d at 492-94; Strand, 380 F.3d at 318; Masuda, 759 F. Supp. at 1459. However, there also exists an alternative theory of liability predicated upon <u>actual harm</u> that may flow to a debtor as a result of a statutory violation. Cf. Clark, 460 F.3d at 1171 ("In judging the actions of a debt collector, we invariably ask whether the information it provided was or its actions were confusing or misleading."); § 1692k(a) (providing that actual damages are recoverable in FDCPA civil actions). It is that theory Plaintiffs advance in this case. It is a theory that is not technical in nature, but rather premised on external language that falsely suggests the communication's purpose is other than notification of debt collection. The harm Plaintiffs suggest will flow from the

---

also FTC Staff Commentary, 53 Fed. Reg. at 50,101 ("This Commentary is the vehicle by which the staff of the Federal Trade Commission publishes its interpretations of the Fair Debt Collection Practices Act (FDCPA). It is a guideline intended to clarify the staff interpretations of the statute, but does not have the force or effect of statutory provisions. It is not a formal trade regulation rule or advisory opinion of the Commission, and thus is not binding on the Commission or the public.").

[7] Plaintiffs cite Clark v. Capital Credit & Collection Serv., Inc., 460 F.3d 1162 (9th Cir. 2006) for the proposition that the Ninth Circuit, if faced with the issue, would not adopt the benign language exception. Oppo. at 9. That case, however, cautioned against finding exceptions to § 1692c(c), a provision of the FDCPA not at issue in this case, on the basis of *expressio unius est exclusio alterius*. Id. at 1169. Section 1692c(c), which restricts the time, place and manner of collector communications with debtors, does not contain the "without limiting the general application of the foregoing" language of § 1692f, the provision at issue here. Accordingly, the doctrine of *expressio unius est exclusio alterius* has no application and Clark does not indicate that the Ninth Circuit trend is against adoption of the benign language exception.

alleged deception is the consequence of the debtor ignoring (discarding) the notice due to the content of the language. Such a violation is substantive in nature, not merely technical.

Rather than attempt to articulate a broad definition of what constitutes "benign language", it is sufficient for purposes of resolving this motion to recognize that even after application of the benign language exception, printed language on an envelope may violate the statute in different ways. One thing would appear to be clear: if printed language on an envelope causes a debtor damage, loss of rights, or other harm, the language is <u>not</u> benign. This conclusion rests comfortably alongside the purpose of § 1692f(8), which is to prevent disclosure of the envelope's contents. Language on an envelope that violates the letter of § 1692f(8) <u>and</u>, by telling only half the story,[8] actively misleads a debtor into believing the content is merely a solicitation for credit, cannot be deemed benign.

Applying the benign language exception here, the question is whether or not "You are Pre-Approved* See conditions Inside" is benign. The court is unaware of any authority providing whether such a question is one of law or a question of fact. The Ninth Circuit has held that whether a § 1692g(a) notice was "overshadowed" by contradicting language contained in the notice is a question of law to be decided by the court. <u>Terran</u>, 109 F.3d at 1432. The Ninth Circuit reasoned that not only was this holding consistent with cases from other circuits, but it was further supported by the rule that interpretation of a contract, where interpretation does not turn on extrinsic evidence, is a question of law. <u>Id.</u>; <u>see</u> <u>also</u> <u>Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.</u>, 69 F.3d 1034, 1036 (9th Cir. 1995) ("The question whether the forum selection clause is mandatory or permissive is a matter of contract interpretation that we review de novo because it does not turn on the credibility of extrinsic evidence."); <u>Miller v. Safeco Title Ins. Co.</u>, 758 F.2d 364, 367 (9th Cir. 1985) ("The interpretation of a contract is a mixed question of law and fact. When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable de novo. When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous.").

---

[8]Language telling the full story–that the letter also pertains to debt collection–is, of course, prohibited.

Under <u>Terran</u>, then, the issue of whether the language "You are Pre-approved* See conditions inside" is benign is a question of law if resolution does not turn on the credibility of extrinsic evidence, or is a question of fact if resolution does depend on the credibility of extrinsic evidence. The court concludes that the issue is one of fact. In <u>Terran</u>, the analysis was internal, confined to the four corners of the collection letter. The Ninth Circuit compared language providing that unless the debtor telephoned the debt collector immediately legal action may be taken, with the language providing the requisite § 1692g(a) notices, including the debtor's right to dispute the debt within thirty days, and analyzed the placement and substance of each provision relative to each other. <u>Terran</u>, 109 F.3d at 1433-34. By contrast, here the inquiry is focused externally on the effect of the envelope's language on debtors. Plaintiffs theorize that debtors tend to throw away, without opening, letters that have the appearance of junk mail. Extrinsic evidence must be considered in order to determine whether in fact the least sophisticated consumer would tend to throw away Defendant's letters without opening them.[9] An analysis limited to the four corners of the envelope would be insufficient.[10]

Defendant relies on the Eighth Circuit's decision in <u>Strand</u> which observed, in dicta, that language on debt collection envelopes giving the appearance of junk mail fall within the benign language exception. The <u>Strand</u> court, however, did not create a <u>per se</u> rule that language creating the appearance of junk mail is always benign. <u>Strand</u>, 380 F.3d at 319. Rather, <u>Strand</u> understood benign language to mean language which only violates the strict letter of § 1692f(8), and not language causing affirmative harm to debtors. <u>See id.</u> (finding benign the "neutral logo" and "innocuous phrases" printed on the debt collector's envelopes).

---

[9] Arguably, if sophisticated or otherwise reasonable debtors, regardless of where they stand on the sophistication continuum, would tend to discard the notice as yet another unsolicited offer for a loan or other form of credit, then a viable claim under § 1692f(8) has been stated. In FDCPA cases, courts have so far focused almost exclusively on the vulnerabilities of the hypothetical least sophisticated debtor. The standard, however, should be extended to also protect reasonably sophisticated debtors from unfair collection practices. In other words, although the court must work within the least sophisticated debtor standard, certainly there exist those reasonable consumers who might also fall victim to unfair debt collection practices and who, with respect to the instant case, may be even more inclined to discard Defendant's notice based because of their experience receiving unsolicited offers of credit by mail.

[10] For example, in connection with the present motion Plaintiffs ask the court to take judicial notice of a Federal Trade Commission study that purportedly proves that most consumers will not open mail that has the appearance of junk mail. Although the study is not evidence that can be properly noticed, <u>see</u> Fed. R. Evid. 201(b), and therefore the court disregards in deciding the present motion, the study shows why resolution of the issue turns on extrinsic evidence.

Finally, Defendant argues that under Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197 (9th Cir. 1999), the FDCPA only requires debt collectors to send notice of the debt, and that there is no additional requirement that collectors confirm the notices were opened or otherwise received.  The issue in Mahon was whether § 1692g(a)[11], which obligates debt collectors to send a written notice within five days after an initial communication with the debtor, required the defendant to also confirm receipt of that notice.  The Ninth Circuit held that because the statute merely obligated debt collectors to send notice, the failure to confirm receipt of the notice was not an FDCPA violation.  Id. at 1201.  Here, the relevant provision is § 1692f(8), not § 1692g(a), and the issue is not whether the FDCPA obliges Defendant to ensure that debtors open their notice letters.  Rather, the issue is whether the practice of making debt collection letters look like junk mail is an unfair or unconscionable practice under either § 1692f or § 1692f(8).  Therefore, the court's decision is not contrary to Mahon, which merely addressed a debt collector's affirmative obligations to give notice under § 1692g(a).

For these reasons, the motion is denied with respect to the § 1692f and f(8) claims.

**C.     § 1692g - "Overshadowing" Claim**

A debt collector, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt", is to provide in writing to the debtor certain information,

---

[11] That provision is as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 1692g(a).

including the debtor's right to dispute the debt within thirty days of receiving notice.[12] § 1692g(a). This writing is referred to as the validation notice. Section 1692g "is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor." <u>Swanson</u>, 869 F.2d at 1225. "[T]o be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." <u>Id.</u> Whether notice is "overshadowed" is a question of law to be resolved by the court. <u>Terran</u>, 109 F.3d at 1432.

Most courts find overshadowing in the presence of language implying that the debtor must make payment immediately, thereby obscuring the message that the debtor has the right to dispute the debt within 30 days. <u>Id.</u> at 1433 (discussing cases); <u>Bartlett</u>, 128 F.3d at 500; <u>Renick</u>, 290 F.3d at 1057. As the Seventh Circuit has noted, "overshadowing" is a term of art bearing questionable utility:

> Most of the cases put it this way: the implied duty to avoid confusing the unsophisticated consumer can be violated by contradicting or "overshadowing" the required notice. *E.g., Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir.1997); *United States v. National Financial Services, Inc.*, 98 F.3d 131, 139 (4th Cir.1996); *Russell v. Equifax A.R.S.*, *supra*, 74 F.3d at 34; *Graziano v. Harrison*, *supra*, 950 F.2d at 111. This sounds like two separate tests, one for a statement that is logically inconsistent with the required notice and the other for a statement that while it doesn't actually contradict the required notice obscures it, in much the same way that static or cross-talk can make a telephone communication hard to understand even though the message is not being contradicted in any way. The required notice might be "overshadowed" just because it was in smaller or fainter print than the demand for payment. *United States v. National Financial Services, Inc.*, *supra*, 98 F.3d at 139.
>
> As with many legal formulas that get repeated from case to case without an effort at elaboration, "contradicting or overshadowing" is rather unilluminating-even, though we hesitate to use the word in this context, confusing. The cases that find the statute

---

[12] The notice must include

(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 1692g(a).

| | |
|---|---|
| 1 | violated generally involve neither logical inconsistencies (that is, denials of the consumer rights that the dunning letter is required to disclose) nor the kind of literal "overshadowing" involved in a fine-print, or faint-print, or confusing-typeface case. In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses [citing cases]. |
| 2 | |
| 3 | |
| 4 | |
| 5 | It would be better if the courts just said that the unsophisticated consumer is to be protected against confusion whatever form it takes. A contradiction is just one means of inducing confusion; "overshadowing" is just another; and the most common is a third, the failure to explain an apparent though not actual contradiction-as in this case, which is indistinguishable from our recent Chauncey decision, as well as from most of the other cases we have cited. On the one hand, Heibl's letter tells the debtor that if he doesn't pay within a week he's going to be sued. On the other hand, it tells him that he can contest the debt within thirty days. This leaves up in the air what happens if he is sued on the eighth day, say, and disputes the debt on the tenth day. He might well wonder what good it would do him to dispute the debt if he can't stave off a lawsuit. The net effect of the juxtaposition of the one-week and thirty-day crucial periods is to turn the required disclosure into legal gibberish. That's as bad as an outright contradiction. |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |

Bartlett, 128 F.3d at 500-501. In other words, the rationale for imposing liability for validation notices containing contradictory or overshadowing language, even when the notices actually contain the advisements required by § 1692g(a), is to avoid debtor confusion regarding their rights under the FDCPA.

In Swanson, the Ninth Circuit found that the following aspects of a dunning letter overshadowed the validation notice therein:

> The notice Southern Oregon sent Swanson contained, in bold faced type several times larger than the debt validation notice required by section 1692g, the following message:
>
> > "IF THIS ACCOUNT IS PAID WITHIN THE NEXT 10 DAYS IT WILL NOT BE RECORDED IN OUR MASTER FILE AS AN UNPAID COLLECTION ITEM.
> >
> > A GOOD CREDIT RATING-IS YOUR MOST VALUABLE ASSET."
>
> Beneath this language, in small, standard-face type, was the notice required by the statute. Swanson argued to the district court, and contends again here, that the "visual effect" of the large type language overshadowed the debt validation notice, and that its language and tone constituted an impermissible threat of harm to his credit rating if he should avail himself of the Act's 30 day validation period.
> . . .
>
> Reviewing the Southern Oregon notice which Swanson received through the eyes of the least sophisticated debtor, there is little question that it is misleading in both form and content. The required debt validation notice is placed at the very bottom of the form in small, ordinary face type, dwarfed by a bold faced, underlined message three times the size which dominates the center of the page. More importantly, the substance

> of the language stands in threatening contradiction to the text of the debt validation notice. The prominence and message of the "master file" and "most valuable asset" language, lead the least sophisticated debtor, and quite probably even the average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the "master file" of his local collection agency and will, accordingly, lose his "most valuable asset," his good credit rating.

Swanson, 869 F.2d at 1225-26. Thus, under Swanson, the letter's overall tenor and appearance, including whether contradictory or threatening language is given more emphasis by way of a larger font or other visual means, must be considered to determine whether the §1692g notice is overshadowed.

Defendant makes two arguments as to why Plaintiffs' overshadowing claim fails as a matter of law. First, relying on Terran, supra, and Renick v. Dun & Bradstreet Receivable Mgmt. Servs., 290 F.3d 1055 (9th Cir. 2002) (per curiam), Defendant argues that the § 1692g notice was not overshadowed or contradicted by other language therein because the letter does not demand payment within thirty days. Defendant also points out that the notice was in the same size font as the rest of the body of the letter, that the notice was placed in a box, in bold text, with a shaded gray background, and therefore even the least sophisticated consumer would have seen it and understood it.

In response, Plaintiffs argue that under Swanson, 869 F.2d at 1225, the court must review the letter's form and content to assess whether the notice is effectively conveyed. Under that approach, Plaintiffs contend, Defendant's letter violates § 1692g(a) because

> When taken as a whole, the design of the envelope, the language on the envelope, the design of the collection letter as a pre-approval for credit, and the language of the collection letter gives the false impression to the least sophisticated consumer that the collection letter, containing important consumer notices, is only junk mail and should be disregarded.

Oppo. at 4.

Plaintiffs have the stronger argument and the court therefore concludes that Defendant has violated § 1692g as a matter of law. The words "You are Pre-Approved* For a new Visa Credit Card and you can reduce your debt" are printed in substantially larger font than the rest of the letter and placed at the top right hand side. The Visa logo is also prominently placed at the top third of the letter. Above the Visa logo are the words "Invitation Code" followed by a unique number, further giving the

impression that the letter is an invitation for credit and not a debt collection notice. After greeting the recipient, the letter begins with a congratulatory "Good news!" in bold font. The words "good news" are reiterated in the second paragraph, again highlighted in bold. Also highlighted in bold, after the second paragraph, is the phrase "Call Resurgent at 1-866-206-9770 or fill out and return the REPLY CARD to sign up for your new Visa credit card." Although the § 1692g notices are highlighted in a rectangular box in the center of the front page, and the phrase "This is an attempt to collect a debt . . ." is bolded, also in the center of the page, the Visa logo and language pertaining to the credit card offer dominate. In light of these characteristics, the court finds that the FDCPA-mandated notices here are overshadowed by the language pertaining to the credit card offer. The least sophisticated debtor would, given the letter's appearance, be confused as to whether the letter was exclusively an offer for credit that can be easily disregarded, or an effort to collect a debt which, if ignored, will trigger consequences harmful to the debtor. The fact that the envelope reinforces the impression of junk mail further supports this conclusion. For these reasons, the letter is overshadowed by the credit card offer and is therefore "misleading in both form and content." Swanson, 869 F.2d at 1225.

Terran and Renick, cited by Defendant, are distinguishable. In Terran, the Ninth Circuit held that a validation notice was not overshadowed by language providing "Unless an immediate telephone call is made to J. SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to recommend to our client that they proceed with legal action" because "[t]he validation notice immediately follows the language regarding an immediate telephone call", "[t]he text of the letter is uniformly presented in ordinary, same-size font", and "[n]o emphasis is placed on any particular statement, with the exception of the creditor's name and the name of the person to contact at Kaplan's office, both of which appear in uppercase letters." Terran, 109 F.3d at 1430, 1434. In addition, the Ninth Circuit noted, the letter did not require payment immediately, but merely requested an immediate telephone phone call from the debtor. Id. at 1434. Thus, in Terran, no overshadowing occurred because the challenged language was not emphasized visually, nor did it actually contradict the validation notice. Here, the overshadowing theory is different. Plaintiffs allege that overshadowing occurred because the overall tenor and appearance of the letter would lead the least sophisticated debtor to not read it carefully under the mistaken impression that it is only a credit card

offer and not also an attempt to collect a debt. Overshadowing occurs not only when the validation notice contains contradictory language, but also when the overall tenor, form, and context of the notice would mislead the least sophisticated debtor and encourage him to disregard his rights. Terran, 109 F.3d at 1434 ("This language . . . does not threaten *or encourage* the least sophisticated debtor to waive his statutory right to challenge the validity of the debt.") (emphasis added).

Nor does Renick compel a result different from the one the court reaches today. Renick, like Terran, analyzed the letter in terms of whether it was internally consistent such that communication of the § 1692g(a) advisements would not be obviated. Renick, 290 F.3d at 1057-58. As explained above, here Plaintiffs have presented a different theory of overshadowing.

Defendant also argues that other courts have held that similar debt collection letters containing credit card offers and credit card logos do not overshadow the validation notice, citing Bingham v. The Credit Store, Inc., Case No. CIV 99-0941-PHX MS (D. Ariz. Sept. 28, 2000), McIntyre v. Credit Store, Inc., Case No. 99-1249-Civ-T-30C (M.D. Fla. Oct. 26, 2000), and Rios v. Pinnacle Financial Group, Inc., 2006 WL 2462899 (S.D.N.Y. Aug. 23, 2006). Those unpublished decisions are not binding on this court nor are they on point. In those cases, the court dismissed overshadowing claims brought on the theory that the § 1692g notices were printed in small print on the back of collection letters also containing credit card offers. That is not the theory here. For these reasons, the court finds as a matter of law that the notices here are overshadowed in violation of § 1692g and the motion is denied accordingly.

### D. **FDCPA Liability Predicated on Violation of California Law**

Finally, the CFAC alleges that because Defendant violated California Civil Code § 1788 et seq. by including California-required notices in a font that was too small, Defendant employed a false, deceptive, or misleading means in connection of an alleged debt in violation of § 1692e and 1692e(10). CFAC ¶¶ 51-52; Cal. Civ. Code § 1812.701(b) ("The type-size used in the disclosure shall be at least the same type-size as that used to inform the debtor of his or her specific debt, but is not required to be larger than 12-point type."). Defendant argues that no FDCPA claim can lie when liability is predicated only on a violation of state law, citing Wade, 87 F.3d 1098. Wade held that a violation of state law is not a per se violation of the federal FDCPA. Id. at 1100. In response,

Plaintiffs contend, relying on Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006), that "because defendant violated the RFDCPA, defendant violated the FDCPA."

Plaintiffs' argument is foreclosed by Wade. 87 F.3d at 1100; see also Khosroabadi v. North Shore Agency, 439 F. Supp. 2d 1118, 1123-25 (S.D. Cal. 2006) (finding that debt collection letter with notice provision that violated California's RFDCPA nevertheless did not violate FDCPA when read from the standpoint of a least sophisticated debtor).[13] Sprinkle, a case from another district, is inapposite. Sprinkle held that § 1692e(5)[14] prohibits not only the threat to take action deemed illegal by the federal Servicemembers Civil Relief Act, 50 U.S.C. app. § 50 et seq., but also the actual taking of such illegal action. Sprinkle, 439 F. Supp. 2d at 1246. Thus, Sprinkle found FDCPA liability on the basis of action made unlawful by a different federal act. Section 1692e(5), however, is not at issue in this case. In addition, Sprinkle noted that "[t]his Opinion does not mean to suggest that any procedural irregularity in connection with the collection of a debt is automatically converted into a violation of the FDCPA." Id. at 1247. Here Plaintiffs allege Defendant violated the FDCPA by violating California law. Therefore, Wade is on point and controlling, not Sprinkle. Accordingly, Plaintiff's § 1692e and 1692e(10) claims predicated on violations of California law fail and the motion is granted with respect to those claims.

**V.    CONCLUSION**

For the foregoing reasons, the motion is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS SO ORDERED.**

DATED: June 26, 2007

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All Parties

---

[13] According to Plaintiffs' counsel, who was also counsel in Khosroabadi, this case is currently being appealed to the Ninth Circuit.

[14] Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" in connection with the collection of a debt.